Secretary of Defense, Mr. Abrams. May it please the Court, I'm Daniel Abrahams, and I'm here for Lear Siegler Services. This case is bigger than just one contractor, or one union, or one government agency, it actually involves a considerable number of employees and contractors around the nation. As the International Association of Machinists, Amicus Grief, makes the point, that union alone has 20,000 employees who are covered by the Service Contract Act, and many of them are affected by this decision. They have 215 separate collective bargaining agreements. There are many other government unions, government service employee unions that will be affected by this case, and the contractor community is affected by this case, as the Professional Service Council, in its Amicus, makes the point, this is a case that upsets the settled expectations of the contracting community, and disrupts their labor relations. Now turning to the merits of the case, we think the case is very simple. This is a contract interpretation case. It turns on a clause called the Price Adjustment Clause, which is found in every Service Contract Act covered contract. That clause contains clear language. It says simply, the contractor is entitled to an adjustment for the actual increase in fringe benefits made to comply with the wage determination. When that statute talks about increase in fringe benefits, is it talking about an increase in the benefit received by employees, or is it talking about the cost of providing a fringe benefit? I think the statute is clear, Your Honor. If you look directly at the Service Contract Act itself, there are two separate statutory provisions. Provision 1 says that you shall pay prevailing minimum monetary wages. So it speaks in terms of monetarizing the minimum wage that the employee receives. If you look at the statute for fringe benefits, however, you'll see that there's no monetarization requirement in that statute. All it says is that you have to provide, quote, a provision specifying the fringe benefits. It doesn't require in the Service Contract Act statute that you monetarize fringe benefits. And that makes perfect sense, because many fringe benefit plans are defined benefit plans that do not come with a dollar tag to them. They are not monetarized. And indeed, if you look at the case law under the Service Contract Act, and I refer you to the Trinity Service case cited by the government, you'll see that the D.C. Circuit Court, which heard that case, said that all that's required to be a bona fide fringe benefit under the Service Contract Act is, quote, that you incur a present cost or the risk of a future cost. It's not that you have to monetarize the benefit. You have to incur a cost or risk incurring a future cost. There's no minimum requirement. But the question I have is, obviously, when the Department of Labor imposes an obligation to increase a benefit received, then clearly that's covered under this provision. And the government bears the cost of that increase. But where the Department of Labor, if you will, endorses or obligates a contractor to provide a certain fringe benefit, and that benefit actually doesn't change in terms of what the employees see or receive. But the cost increases. Is that within or outside the language of this statute? I think that's clearly within the statute and within the contract clause. Even if, let's take an example of an insurance benefit and an obligation to provide a certain life insurance benefit. And no employee's life insurance benefit policy increases and no change is required by any Department of Labor actions. But yet the cost of providing insurance, the premiums go up. Is that to be passed along to the government under this provision or not? Yes, Your Honor. That is to be passed on. And I believe that was decided by the court in service ventures. And it's been decided by several decisions at the ASPCA that it's not whether the benefit has changed. You can have the same benefit in the wage determination. The issue is the cost to the contractor. And if the cost increases, then you get an adjustment. But in service ventures, obviously the cost increased, but the obligation was to provide vacation benefits and more employees qualified simply because their service increased, their years of service increased. So there were greater benefits mandated by the provision, and obviously that brought with it some costs. And that's a little bit easier to see how it fits. But isn't that distinguishable from the circumstances in this case where the benefits aren't changing necessarily, but the cost is obviously increasing? In service ventures, Your Honor, the benefit stayed the same. It was one week of vacation after one year of service. It was the cost that changed because more employees became eligible for the benefit and therefore the contractor experienced a total greater cost. The statute, the language itself, does seem to be focused on the cost in the sense that it says in the price adjustment clause, subparagraph D, the contract price or the labor rates will be adjusted to reflect the contractor's actual increase or decrease in applicable wages. Obviously the contractor is not getting a higher wage when the Department of Labor imposes a higher wage, but the contractor is incurring a cost. And continuing on, wage and fringe benefits. So that suggests that this statute is talking about increased costs. But yet the Department of Labor didn't take any action in imposing a greater benefit in this case. It was simply cost due to other factors unrelated to the Department of Labor. I think, Your Honor, you put your finger on the operative words right in that clause. It's the contractor's actual increase. That's exactly what it says. The contractor. It doesn't say the wage determination's actual increase. It doesn't say the collective bargaining agreement's actual increase. It says the contractor's actual increased cost caused by the new collective bargaining agreement. Well, does that mean that if the collective bargaining agreement obligates the contractor to provide us a particular benefit, say a defined benefit, health benefit, that the contractor, in effect, has gotten a blank check? No requirement to monitor costs at all because it doesn't matter. Whatever the cost is, Uncle Sam will pay for it. Absolutely not. There are checks and balances on the contractor under this process. The Department of Labor has set up two ways the government can challenge the wage determination. The government can challenge the wage determination saying that collective bargaining agreement was not at arm's length. You wrote too much of a blank check. You got in too close of a sweetheart deal with the union. We think you should throw that out. And they bring that claim to the Department of Labor and there's a procedure in the regs and it's set forth in the statute. But that doesn't apply where the cost simply goes up. And the other way they can challenge it is that it's substantially at variance to the cost prevailing in the locality. That's the second shoe that drops. And that also goes to the Department of Labor. And the Department of Labor can decide whether the cost under this collective bargaining agreement for fringe benefits is unreasonable and the government should be relieved from that collective bargaining agreement. So there's a statutory process and the government here didn't exercise its rights under that process, didn't challenge it. And in fact the costs are very reasonable for this plan. There's no profit, there's no overhead, there's no G&A, there's no third party insurer piling on here. So the costs have been reasonable and the government has never challenged them as unreasonable. Would it make any difference if it was a defined contribution plan? Yes and no. It's not clear to me where the government's position leads and whether it would make a difference. I think it's possible that if you brought the government's theory that there has to be a specified minimum cost in the collective bargaining agreement, that that's going to affect defined contribution plans too. Because we don't always know the cost of a defined contribution. It depends on which plan employees elect, POS plans, HMO plans. It depends on the employee's status, whether they're married, single, have children and elect family coverage. The costs do vary even under these defined contribution plans. And if you buy the government's argument that there has to be a minimum specified cost in the CBA that's just one dollarized figure for fringe benefits, then many contractors with defined contribution plans will also have difficulty here. Even if those defined contribution plan contributions would essentially increase every year, are those costs passed on? In the ordinary course of events, the government has been paying defined contribution plan cost increases as they go up. Yes, sir. So why are they saying that defined benefit plans are different? Well, I'm not sure. I've always been perplexed by the government's argument, but I think they're saying that under the plain meaning of the contract clause, defined benefit plans should be different. That there are actually two kinds of plans, defined benefits and defined contributions, and we only give a price adjustment for the defined contribution plans.  you're not entitled to an adjustment. We think that's very unfair to a whole class of plans that are given to a group of employees that deserve protection. This is a remedial statute, the Service Contract Act. It's meant to protect employees and prevent them from being exploited by their service contract employers. There's a long and dismal history of that in the U.S. But where is the language in the Act that differentiates between defined contribution and defined benefit plans? There is no definition in the Service Contract Act that differentiates, but if you look at the Service Contract Act statute, what it says specifically is that for defined benefit plans or for health plans, you need a provision specifying the fringe benefit. It doesn't require that you have a defined contribution or dollar sum in your plan. It just requires that you have a plan for fringe benefits and that that plan be, quote, bona fide, which is what Trinity Service is all about, whether the plan was bona fide or not. If it's not a bona fide fringe benefit, you're not entitled to impose increases on that cost on the government. And that's every case that was cited in the ASBCA decision involves a non-bona fide fringe benefit, either taxes or severance benefits or other costs that are not bona fide fringe benefits. But health plans are specifically defined in the statute as bona fide. What the statute says is it's a plan for medical or hospital care. That's a quote from the Service Contract Act. Medical or hospital care. Not premiums, not monetarized, but care. And we have a plan for medical or hospital care for our employees. It's a bona fide plan. And we submit to you there's no basis to distinguish that bona fide plan under the Service Contract Act or the price adjustment plan. It is required under the collective bargaining agreement. Absolutely. But is there an issue in this case of enlarged benefits or just the enlarged cost of the previously established health benefits? Just the enlarged cost is the only issue. The actual facts show that we inherited a plan from Lockheed Martin. We entered into a bridge agreement agreeing to the same plan that the predecessor contractor had and it didn't change come time for this price adjustment. It's exactly the same plan. So it's only enlarged cost, Your Honor. Let's hear from the government. Ms. Keneally. Good afternoon. May it please the Court. This Court should affirm the decision of the Armed Services Board of Contract Appeals which held that LSI was not entitled to a contract price adjustment as a matter of law. At issue in this case is a firm fixed price contract. As such, the contract could be modified in two ways. One, by a change pursuant to the changes provisions in the contract or two, by a price adjustment through the SBA's price adjustment clause. Now the question here is not whether LSI's employees will receive the fringe benefits defined in the SBA. The question here is whether the contract price should be adjusted to reflect an increase in costs that were not mandated by the SBA. Under the plain language of the price adjustment clause, the contract price will be adjusted to reflect the contractor's actual increase or decrease in fringe benefits to the extent the increase is made to comply with an increased wage determination. Well, here there was a collective bargaining agreement and there was an obligation to provide certain defined benefit, fringe benefit and there was a cost increase associated with the contractor's maintenance of that fringe benefit. That's true, Your Honor. But that increase in cost was not mandated by any provision in the SBA. It wasn't even mandated by the CBA or the settlement stipulation. Well, this goes to the question I asked earlier I think as to what the language of this clause means when it says the contractor's actual increase or decrease in fringe benefits. Does that refer to the cost or does that refer to the benefit? What that refers to Your Honor, the SBA acts as a minimum wage statute, minimum wage and fringe benefit statute. What that means is that the wage determination that's in place determines the minimum amount that the contractor must spend on wages or fringe benefits. When there's a CBA when there's a CBA, the wage determination the minimum that the contractor must spend is replaced by what is identified in the CBA. So for example if the CBA had an identified cost and the cost was $2 an hour for fringe benefits and then it provides in the settlement stipulation that the cost would now be $3 an hour. That provides a cost that the SBA and the Department of Labor can enforce. When it is a defined benefits plan, such as the one here, there's no minimum cost that the contractor is obligated to spend. So there's no minimum cost that the Department of Labor can enforce. And as such, any increase that occurs in the cost of providing those defined benefit plans is not mandated by the SBA. It's basically a blank check as you said. It's a blank amount. And that's why these type of costs the ones that are incurred here in a defined benefits plan are not recoverable from the government under the price adjustment clause of the SBA. Well, you take it that the service ventures doesn't control here. No. Service ventures is distinguishable from this case because in services ventures the vacation benefits were defined in that CBA. There was a monetary cost that was put to them. And I think as Your Honor pointed out, in that case, the vacation benefits were laid out and the increase in cost occurred because employees became eligible for those additional vacation benefits as the contract moved on. In this case, there's no cost that's assigned to this defined benefits plan. And as such, the increase in cost that LSI is claiming is not mandated by the SBA. It's not even mandated by their settlement stipulation. It's basically mandated by Blue Cross and Blue Shield and LSI's projected increase of what their cost to that plan is going to be. I don't quite understand why it's not a probably a defined cost. Why isn't it a defined cost? Well, there's no defined cost because the way their CBA is set forth, it just sets forth defined benefits. It basically just sets forth the benefits that the company will provide to the employees. But there is some cost involved with those benefits, but we don't know what those costs are. And those costs, you would know at the end of the year. I don't quite understand why those costs are ephemeral. Why aren't those known when they're paid? Well, those costs may be known at the end of the year by the predecessor, by the person who operated the plan in terms of, well, this is what we expended this year in providing these benefits. But we don't know. Until that happens, we don't know what the actual individual cost is per the employee for the SCA to for the Department of Labor to enforce. And I guess the best way to explain this would be to refer the court to 29 CFR section 4.175A2. And that regulation provides that in determining whether a contractor complies with an applicable fringe benefit determination, it's the amount of the each individual employee that governs. So it's the monetary cost, not the benefits provided that determines whether or not the contractor is meeting the requirements under the SCA. So the government position is that the contractor not only can but must reduce the benefits available to the employee if Blue Cross Blue Shield increases their charges? No, the government is not arguing that. But that is the essential necessary consequence, is it not, if those costs can't be increased, that is if the reimbursement, that is if these charges are not available to be reimbursed, then the contractor has no choice but to reduce the benefit. And if that reduced benefit violates some union contract or something else, I don't really understand the consequences of this rigorous position of the government that there can be no increase in the cost of benefits. Well, no, Your Honor. LSI would not be required to reduce the benefits when the costs increase. They would under the CBA, the way it reads, they would still be obligated to provide those benefits under the CBA. And where are those funds to come from if they're not to be paid for by the party to the contract, the government? Well, that would be a business decision by LSI where those funds would come from. It was their business decision to provide a defined benefits plan as opposed to one where it was defined by contribution, by cost. And as such, they, by having a defined benefits plan, they're not held to a minimum cost. Suppose the cost to provide those benefits went down. If there was a specific cost applied to it, LSI under the SBA would have to give back to their employees the difference of how much it went down. For example, if there was a minimum cost of $2 per hour and providing those benefits went down to $1.50 per hour, LSI would have to provide that 50 cents that it saved to its employees. But when it's a defined benefits plan, they're not bound by a minimum cost anymore. Yes, and so how does this hypothetical unlikely event affect the actual situation we have? Well, it affects the situation in that it explains it explains that the price adjustment clause only does not apply in this case because LSI has a defined benefits plan. We have a statute that says the contractor's actual increase or decrease, which would take care of the situation you've mentioned, because in that case the reimbursement would also, or the pass-through, would also be decreased. So we have a statute. This is the contractor's actual increase or decrease in the cost of fringe benefits. Well, actually, Your Honor, the language doesn't specifically say cost, but the language says the contractor's actual increase or decrease in applicable wages and fringe benefits You're saying that cost does not belong in that sentence. No, we're not arguing that cost does not belong in that sentence. We're arguing that the second part of that sentence is what is the issue here. To the extent that the increase is made to comply with the wage determination, and in this case our argument is that any increase in LSI's cost was not to the extent I added the word cost and you left out the word voluntarily. Is voluntarily made by the contractor? I believe the term voluntarily only applies to the part of the statute regarding a decrease, or if the decrease is voluntarily made by the contractor. I'm really trying to understand the consequences of this position, which I must say I find very strange. It's been notorious and unfortunate that health costs have been increasing. Here, we're told that this is Blue Cross Blue Shield. We all, perhaps, have observed that their fees are increasing. And yet, I'm still not sure whether the government's position is that therefore the benefits should be reduced. You say no, you can't do that. I just wonder, but that the government will not bear it despite the statute which says that it's passed through? Under the statute, the government is only required to bear increases that are mandated by the SBA. The government is not required to cover any increase. That's what I'm trying to understand. What is mandated here? Do they need an elimination? We have the understanding that if such costs are the product of a collective bargaining agreement, they're subject to challenge if they were, in fact, some sort of sweetheart deal. But otherwise, if they're objective and legitimate, that they're the ordinary consequence of such a cost reimbursement arrangement. What is needed here, Your Honor, is a number to there of a minimum cost requirement for fringe benefits. That's what's needed here, and that's why the price adjustment clause does not apply. Because any increase in cost was not mandated by the SBA. It could not be because there's nothing that the Department of Labor could enforce. There's no number in the blank. It's just a defined benefits plan, which they decided to do. Well, that was under the collective bargaining agreement. Let's see if we can straighten at least the facts out. A defined contribution plan basically allows the employer to make a certain contribution towards health care on a monthly basis. Let's say it's $100 or $200 a month. That's correct, Your Honor. And if the defined benefit plan only means that they go out and hire Blue Cross and Blue Shield, and Blue Cross and Blue Shield raises those rates for the defined benefits which they provide the employees, that's not covered. Is that what you're saying? Yes, Your Honor. That is what we're saying. And it's not covered because your second example would not be an increase that is mandated by the SBA. So that naturally encourages contractors to provide their employees only with defined contribution plans. That's the only plan where the contractor has any sort of compensation under this provision as you interpreted. Correct? That's correct, Your Honor. It would encourage those type of plans, but the CBA is something that's negotiated between the contractor and the union, and it would be something that would be worked out between the two of them. Obviously, but the I mean, during the course of those negotiations, the contractor is going to have in mind the fact that, well, if we wind up with a defined benefit plan, then we're stuck with any cost increases, whereas if we agree to a defined contribution plan, any increase is passed along to the government. That's true, Your Honor, but with a defined  receive the benefits if there was a decrease as opposed to an increase in cost. Well, that may be true. Unlikely, but true. Again, just thinking out loud, trying to understand what, in fact, the parties had in mind, what, in fact, the government had in mind when it came up with this text. And it seems to me that they cannot have had in mind that either whatever collective bargaining agreement has been complied with or additional health benefit costs, let's be specific as to which range would be passed on to the employee of someone who works for a contractor who's serving the government on the thesis that that is irregular in the general employment field, which might very well affect the quality of employee available to the government. Well, Your Honor, the purpose of the price adjustment clause was to protect the contractor against increases that were mandated by the Services Contract Act. That's what the purpose of it is for. This contractor doesn't seem to feel he's being protected? Just the opposite. Well, if he's not protected under the price adjustment clause, it's because they made the decision to provide a defined benefits plan as opposed to a defined contribution plan, which as I stated before, does not provide a number for that blank for the minimum cost that they must spend for each employee for fringe benefits. And because of that, there's nothing for the SBA to mandate. There's nothing for the Department of Labor to enforce. And that's what takes it out of this clause. Okay. Did you have a question? No. Any more questions? Thank you, Ms. Keneally. For these reasons, the Court should affirm the decision of the ASPCA. Thank you. Mr. Abrahams. Thank you, Your Honor. It appears to me that you get the regulatory interpretation, contract issues, and the statute. So let me talk about the practical effect since that's what we were discussing here. There is a 36-year old social compact between the government, the contractors, and the employees which says as follows. You contractors don't include your cost for escalations for fringe benefits and wages on government service contract act covered work. You warn to us that you haven't included any contingency in your bid for these costs. You make an affirmative promise of that. And then we, the government, and I shouldn't point to myself, I should point to Marla here, but the government says we will pay you for your increased costs that you, the contractor, experience. And it says the contractor's actual increase. That's what the clause says. And it's the increase made to comply with the that the contractor enters into. That's the other shoe of the contract clause. And that social compact between the government results in the government getting bids from bidders where they don't have to worry about who's escalating the cost and who isn't. And they can compare these bids on a level playing field, apples to apples. But if you go down the road the government's urging you to go down to, you're going to have some contractors with load their costs into their bid and you'll have some contractors with defined contribution plans who don't have to load the costs into their bid. And the government's going to be faced with the problem of comparing apples to oranges and evaluating which proposal is in the best interest of the government. And there's an inherent disparity in the competitive bidding process which is presented by the government's argument that some fringe benefit plans get an adjustment and others don't. And that problem was faced by the FAR Council in 1984 when they issued the FAR, the government beseeched them to say no adjustments for collective bargaining agreements whatsoever. And the government said well then how are we going to evaluate proposals? And even the Air Force which wrote the memo that we've asked you to consider suggests that there is a dilemma here that there is, and I'm quoting from the Air Force's memo, there's an inherent disparity in bidding assumptions would not ensure that they represent that all bidders base their bids on the same expectations. And that's the reason that the FAR Council did go down this road in 1984 and instead if you look at paragraph 8 of the clause they added the phrase that this clause covers collective bargaining agreements and you get a price adjustment under your collective bargaining agreement for increases in wages and fringe benefits. So I think that's the key issue here. I think we're out of time. Thank you. Thank you Mr. Abrahams and Ms. Keneally. The case is taken under submission.